

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-30-2002

# Metro Regional Cncl v. NLRB

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-3973

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Metro Regional Cncl v. NLRB" (2002). *2002 Decisions.* Paper 688.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/688

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos:  01-3973/4340
_____

METROPOLITAN REGIONAL COUNCIL OF PHILADELPHIA AND VICINITY,
UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA,

Petitioner

v.

NATIONAL LABOR RELATIONS BOARD,

Respondent


Petition for Review and Cross Application for Enforcement of An Order of the National
Labor Relations Board
(Cases No. 4-CB-8315, 4-CC-2245, 4-CC-2250, 4-CC-2247)


Argued on July 29, 2002

Before: BECKER,Chief Judge, ROTH
and RENDELL, Circuit Judges


(Opinion filed:  October 30, 2002)


Richard C. McNeill, Jr., Esquire
Jennifer B. Liebman, Esquire (Argued)
Sagot, Jennings & Sigmond
Penn Mutual Towers, 16th Floor
510 Walnut Street
Philadelphia, PA 19106-3683

        Counsel for Respondent

Arthur F. Rosenfeld
General Counsel

John E. Higgins, Jr.
Deputy General Counsel

John H. Ferguson
Associate General Counsel

Aileen A. Armstrong
Deputy Associate General Counsel

Robert J. Englehart
Supervisory Attorney

David B. Schwartz (Argued)
Attorney
National Labor Relations Board
1099 14th Street, N.W.
Washington, D.C. 20570

      Counsel for Petitioner

O P I N I O N

ROTH, Circuit Judge:

    Petitioner Metropolitan Regional Council of Philadelphia and Vicinity, United Brotherhood of Carpenters and Joiners of America (the Union) asks us to review a National Labor Relations Board Order insofar as it affirmed an ALJ's conclusion that the Union committed an unfair labor practice by repeatedly broadcasting a protest message at excessive volumes in downtown Philadelphia. We will not, however, grant the petition for review since the Board's factual findings are supported by substantial evidence on the record as a whole and the Board's construction of the National Labor Relations Act is reasonably defensible.

    A.    Facts and Procedural Background

    This case arises out of the Union's activities protesting the use of contractors by two Philadelphia housing complexes, the Society Hills Tower at 2nd and Locust Streets and the Versailles at 1530 Locust Street. The Union contends that the two contractors employed non-Union carpenters at substandard wages and created unsafe working conditions. Upset that the complexes hired the contractors to do carpentry work, an agent of the Union met with the property manager of each complex. The agent told the property manager at Society Hill Towers that, unless the complex hired different contractors, "there could possibly be some problems in the future." The agent told the property manager at the Versailles that "he would have 100 of his men show up at the job and there might be trouble."

    Shortly thereafter, the Union picketed the complexes and broadcast audio recordings of messages contained in its handbills from the public property adjacent to the complexes. While each recording lasted only about 45 seconds, the recordings were repeated continuously for periods ranging between 45 minutes and 2 hours. The Union broadcast the recordings on 48 separate days at Society Hill Towers and on 6 separate days at the Versailles. At both complexes, the broadcasts began at approximately 7:00 a.m. and 7:00 p.m. - times when the Union expected residents of the complexes to be going back and forth between their homes and their work. At times, the Union played the recordings from multiple, unsynchronized loudspeakers, thereby creating "garbled" noise.

Hundreds of residents, including residents of the 31st floor at Society Hill Towers, complained to the Complexes' property managers about the excessive volume and duration of the Union's broadcasts. In turn, the property managers complained to the Civil Affairs Division of the Philadelphia Police Department and the Air Management Division of the Philadelphia Department of Health - the divisions charged with handling citizen demonstrations and enforcing noise ordinances.

Willie Terrill, a noise pollution inspector for the Air Management Division, attempted on several occasions to accurately measure the volume of the broadcasts. The majority of Terrill's attempts were thwarted by Union "spotters" who signaled for sound system operators to lower the volume of the broadcasts when they saw Terrill approach. On three occasions, however, Terrill circumvented the spotters by arriving early and setting up his volume meters before the broadcasts began. On each of these three occasions, Terrill measured volumes exceeding noise ordinance levels and issued citations to the Union. The Union appealed these citations, and their ultimate resolution is pending. Additionally, Terrill testified that on the occasions when spotters thwarted his efforts, he was able to hear the broadcasts from as far away as five city blocks.

On August 11, 1999, one of the complexes filed an unfair labor practice charge against the Union, alleging that the amplified and repeated broadcasts disturbed the peace of residents and violated 8(b)(4)(ii)(B) of the National Labor Relations Act. After a proceeding before an ALJ in which the parties presented evidence supporting their respective positions, the ALJ determined that the Union's activities violated Section 8(b)(4)(ii)(B) of the Act. Specifically, the ALJ found that the broadcasts were made at excessive volume levels and that the broadcasts had the unlawful, secondary object of coercing the complexes to stop doing business with the contractors.

In a August 27, 2001, Final Decision and Order, the Board affirmed the ALJ's findings, as well as the his conclusion that the Union committed an unfair labor practice. The Board ordered the Union to cease and desist from broadcasting at excessive volume levels for the purpose of coercing the Complexes to cease doing business with the non-Union contractors. The Union thereafter timely petitioned us to review the Order.

B. Jurisdiction and Standards of Review

The Board had subject matter jurisdiction to determine whether the Union engaged in the alleged unfair labor practices pursuant to Section 10(a) of the Act. See 29 U.S.C. 160(a) (2002). Because the Board issued a Final Decision and Order, and the alleged unfair labor practice occurred within this Circuit, we have subject matter jurisdiction to hear the Union's petition pursuant to Section 10(f) of the Act. See id. at 160(f).

We must treat the Board's factual findings as conclusive if they are supported by substantial evidence on the record as a whole, see 29 U.S.C. 160(e), and we "may [not] displace the [Board's] choice between two fairly conflicting views, even though [we] would justifiably have made a different choice had the matter been before [us] de novo." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951). Accord Quick v. NLRB, 245 F.3d 231, 240 (3d Cir. 2001). Subject to limits on the deference we afford agency determinations set forth in Chevron USA, Inc. v. Natural Resources Defense Council, 467 U.S. 837 (1984), the Board's construction of the Act will be upheld if it is "reasonably defensible." Ford Motor Co. v. NLRB, 441 U.S. 488, 497 (1979). Accord Quick, 245 F.3d at 241.

C. Discussion

The Union essentially makes three types of arguments against the Board's Order. First, the Union challenges the evidentiary support for several factual findings. Second, the Union argues that the broadcasts were First Amendment protected speech. Finally, the Union contends that the broadcasts were protected by the Publicity Proviso to Section 8(b)(4) of the Act and Section 8(c) of the Act. We reject each of these arguments in turn.

The Union first argues that no substantial evidence supports the ALJ's findings that the broadcasts were made at excessive noise levels and had an unlawful, secondary object. Because the record is replete with evidence supporting both of these findings, we will not reverse the Board.

In support of his finding that the broadcasts were too loud, the ALJ credited the uncontradicted testimony of Terrill, two Philadelphia police officers and numerous residents. This testimony consisted of first hand accounts that described the noise levels in objective detail by, for example, comparing the noise levels to fire alarms and household appliances. Additionally, the ALJ considered the Union's "spotter" system of

looking out for Air Management Division authorities "probative evidence that [the Union] was fully aware that its broadcasts were being conducted at excessive volume levels." We find this evidence substantial and disagree with the Union's contention that such a finding could be based only upon a final determination that the Union violated a Philadelphia noise ordinance.

In support of the unlawful, secondary object of the broadcasts, the ALJ cited substantial evidence suggesting that the Union was attempting to force or coerce the complexes to stop doing business with the contractors. For example, the ALJ found that the Union agent's warnings that the property managers might have "problems" or "trouble" if they continued dealing with the contractors were "blatant threats." Additionally, the broadcasted messages, themselves, urged the public to use their influence to get the property managers to cease doing business with the contractors. Finally, the fact that the broadcasts were reduced to unintelligible "garble" by the use of unsynchronized loudspeakers is further evidence that the Union was concerned more with making coercive and disruptive noise than with disseminating a particular message. We, therefore, reject the Union's claim that the ALJ's factual findings were erroneous.

Likewise, the Union's argument that the broadcasts were protected First Amendment speech must fail. In International Longshoremen's Ass'n v. Allied Int'l, 456 U.S. 212, 226-27 (1982), the Supreme Court noted:

> We have consistently rejected the claim that secondary picketing by labor unions in violation of   8(b)(4) is protected activity under the First Amendment. . . .  It would seem even clearer that conduct designed not to communicate but to coerce merits still less consideration under the First Amendment.  The labor laws reflect a careful balancing of interests. . . .  There are many ways in which a union and its individual members may express their [views] without infringing upon the rights of others.

456 U.S. at 226-27 (citations omitted). In this case, the excessive volume and the lack of synchronization of the broadcasts make the Union's conduct subject to the Board's legitimate regulation. In fact, the Supreme Court has upheld the constitutionality of such regulation. See Kovacs v. Cooper, 336 U.S. 77, 86-87 (1949) (local ordinance prohibiting "loud and raucous" noise was a constitutional time, place and manner restriction that could be invoked to regulate a labor protestor's use of an amplified sound truck). Moreover, the Union has not argued that it was unable to express its views without infringing on the rights of others by distributing its written handbills.

The Union's final argument, which is based on the Publicity Proviso of Section 8(b)(4) and Section 8(c), is also misplaced. While the Publicity Proviso permits truthful non-picketing publicity directed toward consumers and the public, it does not protect coercive conduct. Similarly, Section 8(c) by its own terms protects only "expression [that] contains no threat of reprisal or force or promise of benefit," 29 U.S.C.   158(c), and not coercive speech used in furtherance of an unfair labor practice. See Int'l Bhd. of Elec. Workers v. NLRB, 341 U.S. 694, 704-05 (1951). Because substantial evidence supports the Board's finding that the broadcasts were coercive, we conclude that the Union cannot seek protection under either the Publicity Proviso or Section 8(c).

D.   Conclusion

For the foregoing reasons, we will deny the petition for review of the August 27, 2001, Order of the Board insofar as it held that the Union's broadcasts constituted an unfair labor practice. The cross application for enforcement is granted.

---

TO THE CLERK:

Please file the foregoing Opinion.

BY THE COURT:

/s/ Jane R. Roth
Circuit Judg